[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12699
Non-Argument Calendar

_____

D.C. Docket No. 1:08-cr-00219-TFM-C-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERRY WAYNE BROWN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(April 16, 2021)

Before NEWSOM, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Jerry Wayne Brown appeals the district court's revocation of his supervised release. Brown argues that the district court clearly erred in finding that he violated a condition of his supervised release by committing a new crime. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Brown was convicted of possessing a firearm as a felon and sentenced to forty-six months in prison followed by three years of supervised release. In 2020, his probation officer filed a petition to revoke his supervised release, alleging that he had committed a new crime. The petition alleged that Brown assaulted Justin Dees on April 2, 2020, breaking Dees's jaw in three places. Brown admitted to his probation officer that he struck Dees but claimed he did so in self-defense. His defense was that he punched Dees only after Dees grew irate and displayed a firearm.

At the revocation hearing, Dees testified that on the day of the incident he was drinking beer at his cousin's house. Dees stated that Brown's niece made up a story about Dees and Brown arrived to confront him about it. Brown accused Dees of "talking slop" to his niece and punched him in the jaw with brass knuckles. The blow fractured Dees's jaw into pieces and required him to undergo multiple surgeries. Dees testified that he didn't have a gun with him that day and didn't remember if he fired shots after Brown broke his jaw.

Alana Dees, the victim's sister, witnessed the altercation, which she described as a "one hitter" rather than an actual fight. She saw Brown punch her brother in the

jaw and afterwards saw the brass knuckles on his hand. Dees's sister testified that her brother didn't have a gun and didn't shoot after Brown punched him.

Detective Emanuel spoke with Dees, Dees's mother, and Dees's sister about the incident. Dees told the detective that Brown had accused him of disrespecting his niece, pulled "something" out of his pants, and hit him with it in the jaw. Dees's mother's version of the fight was "pretty much" the same. And Dees's sister told the detective that she saw Brown with a pair of brass knuckles on his hand after he broke Dees's jaw.

Brown's witnesses had a different take on the incident. Shikeria Smith, Brown's girlfriend's daughter, saw the fight. She testified that Dees was angry and exchanged words with Brown. Smith saw Dees lift his shirt "like he had" a gun. Brown then punched Dees with his bare knuckles. Dees walked to a car after the punch, Smith stated, and as the car drove away Dees leaned out the passenger window and fired a gun towards his cousin's house.

Finally, Tshika Cambridge, Brown's niece, testified that Dees accused her that day of prank calling him. After he became threatening, Cambridge called Brown and asked him to pick her up. After Brown arrived, she saw him confront Dees. Cambridge saw the black handle of a gun sticking out of Dees's pocket and tried to warn her uncle. Brown then punched Dees without brass knuckles. Cambridge testified that Dees got into a car after he was hit and shot at her but missed.

3

The district court determined that Brown had violated the terms of his supervised release. The district court found that Brown "was not acting in self-defense" when he struck Dees. Brown used brass knuckles to break Dees's jaw, the district court found, but the district court stated that it would impose the same sentence even if Brown hadn't used a weapon because he severely injured Dees "for no good reason." The district court revoked Brown's supervised release and sentenced him to two years in prison followed by one year of supervised release. Brown appeals.

## STANDARD OF REVIEW

We review the district court's conclusion that a defendant violated the terms of his supervised release for an abuse of discretion. United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994). A district court may revoke a term of supervised release if it finds by a preponderance of the evidence that the defendant violated a condition of release. 18 U.S.C. § 3583(e)(3); United States v. Sweeting, 437 F.3d 1105, 1107 (11th Cir. 2006). We review the district court's factual findings for clear error. United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993).

## DISCUSSION

Brown argues that the district court abused its discretion by revoking his supervised release because there was no credible or reliable evidence supporting the finding that he assaulted Dees. We disagree. The district court didn't clearly err by

finding that Brown hadn't acted in self-defense when he fractured Dees's jaw in three places "for no good reason."

Under Alabama law, a person commits a second-degree assault if he intentionally causes serious physical injury to another, intentionally causes physical injury with a deadly weapon, or if he recklessly causes serious physical injury with a deadly weapon. Ala. Code § 13A-6-21(a). Brown doesn't dispute that he struck Dees. And he doesn't dispute that Dees suffered a serious physical injury. Nor could he; Dees's jaw was fractured in three places and he underwent multiple surgeries. See id. § 13A-1-2(14) (defining "serious physical injury" as an injury "which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ"). The main contested issue at the revocation hearing was whether Brown was justified in shattering Dees's jaw.

A person is justified in using physical force to defend himself against what he "reasonably believes to be the use or imminent use of unlawful physical force." Id. § 13A-3-23(a). Deadly physical force is defined as "force which, under the circumstances in which it is used, is readily capable of causing death or serious physical injury." Id. § 13A-3-20(2). A person may use deadly physical force in self-defense if he reasonably believes that another person is "[u]sing or about to use unlawful deadly physical force." Id. § 13A-3-23(a)(1).

5

We can't say the district court clearly erred by finding that Brown wasn't defending himself when he punched Dees. Dees testified that Brown accused him of "talking slop" to Cambridge and then fractured his jaw without provocation. Alana Dees stated that Brown suddenly punched her brother, breaking his jaw and causing him to bleed "profusely." Both Dees siblings maintained that Dees didn't have a gun when Brown punched him. And Detective Dotch recounted that Dees and Dees's sister told him that Brown attacked Dees because Dees "disrespected his niece." On this record, we aren't left with "the definite and firm conviction" that the district court made a mistake by finding that Brown didn't act in self-defense. See United States v. White, 335 F.3d 1314, 1319 (11th Cir. 2003) (quotation omitted).

Brown urges us to adopt a different view of the evidence—his view—relying on Smith and Cambridge's testimony that Dees displayed a gun before the punch and then fired it afterwards. He argues that Dees and his sister weren't credible and "had strong motives to lie" about whether Dees threatened Brown. But "a trial court's choice between two permissible views of the evidence is the very essence of the clear error standard of review." United States v. Stanley, 739 F.3d 633, 653 (11th Cir. 2014).

It was the district court's task to make the factual findings and credibility determinations in this case. Because the district court didn't clearly err by finding

6

that Brown shattered Dees's jaw "for no good reason" and didn't abuse its discretion by revoking his supervised release, we affirm.

**AFFIRMED.**